IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER E. ILES, | ) |
| Plaintiff, | ) |
| | ) Case No. 04 C 3757 |
| v. | ) |
| RALPH SWANK, JR., MICHAEL C. DEININGER, and ROGER J. SWARAT, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roger Iles ("Plaintiff") brings this action against Ralph Swank, Jr., Michael C. Deininger and Roger J. Swarat (collectively "Defendants") for alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the Securities and Exchange Commissioner's Rule 10b-5, 17 C.F.R. § 240.10b-5; and section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2); as well as state common law and statutory claims. On March 18, 2005, this Court issued a Memorandum Opinion and Order dismissing, without prejudice, certain counts of Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead the alleged fraud with particularity. Plaintiff's state law negligent misrepresentation count was dismissed with prejudice for failure to state a claim under Rule 12(b)(6). Based on the applicable statute of limitations period, the Court also limited any allegations in a re-filed complaint to claims related to Plaintiff's renewed investments of $50,000 on December 1, 2000 and $100,000 on June 1, 2001. Plaintiff filed a Second Amended Complaint and Defendants again have moved to dismiss for failure to plead with the particularity required by Rule 9(b) and for failure to state a claim under Rule 12(b)(6).

Taking as true all facts alleged in the complaint, and construing all reasonable inferences in favor of Plaintiff, it is not beyond doubt that Plaintiff can prove a set of facts which would entitle him to relief from Ralph Swank, Jr. Plaintiff has pleaded with particularity the circumstances of the fraud and facts giving rise to a strong inference that Defendant Swank acted with the required state of mind. Plaintiff's allegations also support a reasonable inference that Defendant Swank's representations and omissions were material and that the representations were not made in good faith or with a reasonable basis. As to Defendants Deininger and Swarat though, Plaintiff has not alleged that they made any misrepresentations nor alleged any facts from which it reasonably can be inferred that they had a duty to disclose the material facts allegedly omitted from Defendant Swank's statements. Accordingly, Defendant Swank's Motion to Dismiss is denied and Defendants Deininger's and Swarat's Motions to Dismiss are granted.

## Plaintiff's Allegations

Plaintiff resides in Waukegan, Illinois, where he is president of Carriage Auto Body, a business specializing in automobile collision repair. Defendants were officers of Statewide Holding Company ("Statewide Holding") located in Waukegan. Defendants were also officers and employees of Statewide Insurance Company, an asset of Statewide Holding. Plaintiff developed a relationship with Statewide Insurance through his course of business, as he often performed estimates and repair work for car owners insured by the company. Statewide Insurance also insured Plaintiff.

In Spring 1991, Defendants marketed subordinate debentures[1] in Statewide Holding to Plaintiff. Plaintiff invested $100,000 and was issued Debenture No. 101 in May 23, 1991. In April

---

[1] A debenture is a debt secured only by a debtor's earning power, not by a lien on any specific asset. BLACK'S LAW DICTIONARY 430 (8th ed. 2004). A subordinate debenture is a debenture that is subject to the prior payment of ordinary debentures and other indebtedness. *Id.*

2

1992, Statewide informed Plaintiff that it intended to redeem its debenture, but told him he could reinvest in a new subordinated debenture at a lower rate of return. Plaintiff renewed his $100,000 investment. Defendants urged Plaintiff to purchase more subordinated debentures in the fall of 1995, which he did on December 1, 1995. Plaintiff invested $50,000 more and was issued five debentures for $10,000 each. Plaintiff renewed his $100,000 investment two more times on June 1, 1998 and June 1, 2001. He renewed his $50,000 investment on December 1, 2000.

On June 9, 1992, Ralph Swank, Sr., father of Defendant Swank, sent Plaintiff a letter with a brochure and combined financial statement for Statewide Holding. At the time, as in 1991 when the debentures first were sold to Plaintiff, Statewide Holding's assets consisted of: Statewide Insurance Company, Swank Insurance Company, Statewide Financial Company, Statewide Risk Management & Adjustment Corporation and Swank Excess Brokers, Inc. At no time did Defendants advise Plaintiff that Statewide Holding had lost some of its assets or that businesses that comprised the holding company were defunct and no longer in business.

In or around November or December 2000, Plaintiff and Defendant Swank met several times at a local Waukegan restaurant and discussed Plaintiff's renewal of his investment. During these conversations, Defendant Swank did not provide Plaintiff with any current financial or other information regarding Statewide Holding or its assets. Defendant Swank, however, reassured Plaintiff that all was fine with Statewide Holding and that Statewide Holding was intending "to go public." Defendant Swank represented to Plaintiff during these conversations that Statewide Holding "remained profitable, was a safe investment, and emphasized the profitability of Statewide Insurance Company." In spring of 2001, before Plaintiff's June 1st renewal, Defendant Swank

3

telephoned Plaintiff and again told him that "the company was doing great and assured him his investment was safe."

Plaintiff first learned of Statewide Holding's financial difficulties in December 2003, when he did not receive his biannual dividends for the debentures. By that point, Statewide Holding's principal asset, Statewide Insurance Co., had been in serious financial trouble for many years and subsequently became insolvent. The other businesses comprising Statewide Holding's portfolio of assets already had ceased business operations. Statewide Holding itself had sought bankruptcy protection.

## DISCUSSION

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint, and construe all reasonable inferences in plaintiff's favor. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rather than requiring particular facts to be pleaded, Rule 12(b)(6) requires only that a complaint must "provide the defendant with at least minimal notice of the claim." *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir. 1998); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (stating that "[o]ne pleads a 'claim for relief' by briefly describing the events . . . [m]atching facts against legal elements comes later").

Rule 9(b), however, sets a heightened pleading standard for most civil cases involving allegations of fraud.[2] *See Ackerman v. Northwestern Mutual Life Insur. Co.*, 172 F.3d 467, 470 (7th Cir. 1991) ("Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud, which sometimes it does and sometimes it does not"). But in securities fraud cases, the Private Securities Litigation Reform Act ("PSLRA") requires pleading that "exceeds even the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 594 (7th Cir. 2006). The PSLRA requires a securities fraud complaint to: (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2).

**I. Defendant Ralph Swank, Jr.**

To establish liability on his § 10(b) and Rule 10b-5 securities fraud claims, Plaintiff must prove that "the defendant either made a false statement of material fact or failed to make a statement

---

[2] Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Circumstances" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old World Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992); *DiLeo v. Ernest & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (Rule 9(b) requires the "who, what, when, where and how: the first paragraph of any newspaper story"). If a plaintiff pleads the circumstances with particularity, Rule 9(b) provides that a defendant's state of mind "may be averred generally." *See In re HealthCare Compare Corp. Securities Litigation*, 75 F.3d 276, 281 (7th Cir. 1996) (a plaintiff is required to plead facts that "afford a basis for believing that plaintiffs could prove scienter").

5

of material fact thereby rendering the statements which were in fact made misleading."[3] *Searls v. Glasser*, 64 F.3d 1061, 1065 (7th Cir. 1995); *see* 17 C.F.R. § 240.10b-5 (forbidding the making of "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"). A statement is material if a reasonable investor would view the misrepresented or omitted fact as "having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson,* 485 U.S. 224, 232 (1988), quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976). Plaintiff alleges that Defendant Swank both made false statements of material fact and omitted material facts that rendered his statements misleading.

A. **Misrepresentations**

Plaintiff alleges that Defendant Swank represented to him during in-person and telephone conversations in November or December 2000 and in the Spring of 2001 that Statewide Holding was "going public," "the company was doing great," "his investment was safe," and "Statewide remained profitable." Plaintiff alleges that in light of the fact that Statewide Holding's principal asset, Statewide Insurance Co., was nearly insolvent, the other businesses comprising Statewide Holding's portfolio of assets already had ceased business operations and Statewide Holding itself had sought bankruptcy protection, these statements were untrue. Having identified each statement alleged to have been misleading, who made the statement, when the statement was made and the reason or reasons why the statement was misleading, the complaint sufficiently pleads the alleged fraud. *See Makor*, 437 F.3d at 594.

---

[3] Defendants do not challenge directly Plaintiff's state law claims. Instead, they argue that if the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

Defendant Swank argues that, even accepting that he made the statements alleged, his statements are not actionable as a matter of law. Defendant Swank characterizes his statements as predictions or forecasts which are not subject to objective verification, and vague or non-specific rhetoric which merely promote the company. While some circuits assume that no reasonable investor would rely on such statements, the Seventh Circuit rejected a per se rule. *See Stransky v. Cummins Engine Co., Inc.,* 51 F.3d 1329, 1333 (7th Cir. 1995). The Seventh Circuit held that indefinite or forward-looking statements include implicit representations that the statements were made in good faith and with a reasonable basis. *Id.* Six months later, the Seventh Circuit made clear though that even statements made in bad faith or without a reasonable basis are not actionable unless they are material. *See Searls v. Glasser,* 64 F.3d 1061, 1066 (7th Cir. 1995). Putting the holdings of *Searls* and *Stransky* into a logical sequence, a court first must determine whether a statement is material. If the statement is material, a court then must determine whether the statement was made in good faith and with a reasonable basis.

The determination of whether a statement is material "is highly fact-dependent analysis." *Searls*, 64 F.3d at 1066; *see Gilford Partners, L.P. v. Sensormatic Electronics Corp.*, 1997 WL 757495, *14 (N.D. Ill. 1997) ("The materiality of indefinite forecasts and predictions should be determined on a case by case basis"). In *Stransky*, the court reversed the grant of a motion to dismiss and permitted the plaintiff to pursue claims based on the statements: "profit margins on these engines should improve" and "the costs of the engines should decline from current level." *Stransky*, 51 F.3d at 1335. Later, in *Searls*, the court affirmed a grant of summary judgment because statements that a company was "recession-resistant" and that it would maintain a "high level of disposition gains" were too vague to constitute material statements of fact. *See Searls,* 64 F.3d at 1066 (holding that

each statement's "lack of specificity precludes it from being deemed material; it contains no useful information upon which a reasonable investor would base a decision to invest"). Applying the materiality standard outlined in *Stransky* and *Searls*, courts in this district have addressed whether various indefinite and forward-looking statements were potentially material to a reasonable investor or were immaterial as a matter of law. In these cases, courts found statements similar to Defendant Swank's representations that the company was "going public" and "remained profitable" immaterial as a matter of law at the motion to dismiss stage.[4] *See Sequel Capital, LLC v. Rothman*, 2003 WL 22757758, *12 (N.D. Ill. 2003) (finding statements "unparalleled management team," "highly profitable company," and this is an "opportunity [Plaintiff] cannot pass up" immaterial but statement that "[Kenny] has very successfully integrated the acquisitions" potentially material); *Fewell v. Kozak*, 1999 WL 966449, *5 (N.D. Ill. 1999) (finding statement "growing and prosperous company soon to be listed on NASDAQ" immaterial). But based on the allegations here, this Court cannot say beyond doubt that there is no set of facts under which a reasonable investor would not have

---

[4] *See also Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 711 (N.D. Ill. 2005) (finding understatement of the cost of agreement with AOL by $2.179 million potentially material but that AOL agreement provided SPSS "[a]n even more dominant position as the analytical solutions provider to the market research industry" immaterial); *Tricontinental Indus. Ltd. v. Anixter*, 215 F. Supp. 2d 942, 948 (N.D. Ill. 2002) (finding statements that the company's "current financial strength will allow us to continue growing aggressively," the company would "continue to maximize operating leverage from our acquisitions," and the company "had a great future and that the upward earnings trend reflected in Anicom's reporting earnings would continue" immaterial); *Sutton v. Bernard*, 2001 WL 897593, *3 (N.D. Ill. 2001) (finding statements that the company's internal information systems were "currently operating without any significant interruptions" and that "integration moved ahead of schedule in the second quarter" potentially material but statement made about a merger that "Marchfirst has expertise in all of these areas, allowing us to immediately and profoundly impact our clients' performance . . . The combination of our two dynamic cultures and their extraordinary success stories gives us amazing competitive strengths" immaterial); *Gilford Partners, L.P. v. Sensormatic Electronics Corp.*, 1997 WL 757495, *14 (N.D. Ill. 1997) (finding statements that included projections of annual increases in revenues, quantified predictions of overall revenue increases, and specific projections for increases in earnings per share potentially material); *Ziemack v. Centel Corp.*, 1996 WL 374120, *5-6 (N.D. Ill. 1996) (finding statements that the bidding process is proceeding "smoothly" and that expressions of interest are "sufficient" and "widespread" material but statements "we would rather manage the process than be managed by it," we do not "pay a lot of attention" to "public statements at this stage of the (auction) process" immaterial). Of these cases, only *Ziemack* involved a motion for summary judgment, the remaining claims were dismissed under Rule 12(b)(6).

found the statements to significantly alter the total mix of information.[5] And thus it would be inconsistent with the fact specific nature of the materiality inquiry to dismiss Plaintiff's claims at this stage. *See Stransky,* 51 F.3d at 1333 ("A blanket rule that forward-looking statements are not material does not allow for the contextual, fact-specific nature of the inquiry and would potentially allow companies to engage in conjecture with impunity").

In addition to sufficiently pleading the fraud, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Scienter for securities fraud claim requires proof that a defendant intended "to deceive, manipulate, or defraud." *Makor*, 437 F.3d at 594, quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 & n.12 (1976). Additionally, in a case involving an indefinite or forward-looking statement, Plaintiff must plead facts that afford a basis for believing that a defendant made the indefinite or forward-looking statement in bad faith or without a reasonable basis. *See Stransky,* 51 F.3d at 1333. Plaintiff alleges that Defendant Swank made certain positive statements regarding the financial position of Statewide Holding. Plaintiff also alleges that Defendant Swank made the statements: (i) knowing that Statewide Holding actually was experiencing significant financial problems, (ii) knowing Plaintiff would rely on the statements and (iii) intending to induce Plaintiff into investing in the debentures. The dichotomy between the positive statements allegedly made by Defendant Swank and the alleged financial difficulties facing Statewide Holding raises a strong inference that his statements were made with the intent to deceive, manipulate or defraud. Similarly, the facts alleged indicate that the statements were not made in

---

[5] Although not considered by the Court on a motion to dismiss, this "total mix of information" also would include information known to Plaintiff or that Plaintiff could have discovered through a reasonable inquiry.

good faith or with a reasonable basis. Accordingly, Plaintiff's Complaint meets the pleading requirements of the PSLRA.

**B.     Omissions**

Plaintiff alleges that Defendant Swank failed to disclose each of the following facts: (1) the debentures were securities that were unregistered with the Securities and Exchange Commission; (2) the changed and adverse financial condition of Statewide Holding; (3) Statewide Holding's only asset was Statewide Insurance Company because the other businesses that had been held by Statewide Holding, including Waukegan Insurance Agency and Statewide Finance Co., had ceased business operations; and (4) other material financial information about Statewide Holding or Statewide Insurance Company or the other businesses held as assets of Statewide. At this point, Defendant Swank does not contest that these facts are material. Defendant Swank instead challenges his duty to disclose the facts to Plaintiff. *See Stransky,* 51 F.3d at 1331 ("Mere silence about even material information is not fraudulent absent a duty to speak"). A duty to speak can arise in several instances, two of which Plaintiff argues here. First, when omission of the material facts renders an existing statement misleading and, second, when a relationship of trust and confidence exists between the parties. *See* 17 C.F.R. § 240.10b-5 (making it unlawful " to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"); *Chiarella v. United States*, 445 U.S. 222, 228 (1980) (finding a duty to disclose arising from a relationship of trust and confidence between parties to a transaction).

A duty to disclose known material facts arises when their omission makes some existing statement misleading. *See* 17 C.F.R. § 240.10b-5; *Selbst v. McDonald's Corp.*, 2006 WL 1371475, *4 (N.D. Ill. 2006) ("[A] speaker is liable if the statement contains an omission of a known material

fact which makes the affirmative statement misleading or false); *Stransky,* 51 F.3d 1329 ("If one speaks, he must speak the whole truth"). Judge Moran explained well exactly when this duty of disclosure arises:

> Whether a fact is material and whether a statement omitting it is misleading are closely intertwined. The more important a fact would be to investors, the more likely its omission will mislead them. Consequently, materiality is more like a continuum than a simple yes or no, material or immaterial. On one extreme, some facts are so important they independently demand disclosure. Silence on the issue is itself misleading. On the other extreme are direct misstatements. Because investors rely on them, inaccurately reporting even the most marginally material facts will likely mislead. This case, alleging that existing statements triggered the duty to disclose additional information, rests between these poles. Discussing an issue, while withholding specific facts, can mislead. Merely mentioning a topic, however, does not require the company to disclose every tangentially related fact that might interest investors, only those that are sufficiently important. If omitting the fact would make the statement so incomplete as to be misleading, the company must disclose it. But omitting smaller details, even if investors might care about them, is not necessarily misleading.

*Anderson v. Abbott Laboratories*, 140 F. Supp. 2d 894, 903 (N.D. Ill. 2001). Given the apparent significance of the facts allegedly omitted, Defendant Swank's omissions regarding the financial condition of Statewide Holding may have rendered his statements regarding the company misleading. Plaintiff also has pleaded that a relationship of trust and confidence existed between himself and Defendant Swank based on their business relationship and their conversations regarding the debenture sales. *See Dirks v.* SEC, 463 U.S. 646, 653-54 (1983) (stating that a duty to disclose may arise from prior dealings or circumstances that lead one party to place trust and confidence in the other). Because Plaintiff has pleaded a duty for Defendant Swank to disclose the omitted facts, Plaintiff's fraudulent omission claims against him survive the motion to dismiss.

11

## C. Duty to Update / Duty to Correct

Plaintiff constantly alleges that Defendant Swank was required to correct his inaccurate statements and supplement the information regarding Statewide Holding given to Plaintiff. A duty to correct "applies when a company makes a historical statement that, at the time made, the company believed to be true, but as revealed by subsequently discovered information actually was not." *Stransky*, 51 F.3d at 1331. Plaintiff has not alleged that the company made any historical statements that the company believed to be true, but were later revealed to be untrue. A duty to update "arises when a company makes a forward-looking statement – a projection – that because of subsequent events becomes untrue." *Id.* at 1332. The Seventh Circuit refused to impose a duty to update on companies. *Id.* at 1333. Instead, liability exists only where the statements were not made in good faith and with a reasonable basis. *See Grassi v. Information Resources, Inc.*, 63 F.3d 596, 599 (7th Cir. 1995). Accordingly, Plaintiff may pursue his claims that Defendant Swank made misrepresentations or omissions of material fact not in good faith or without a reasonable basis, but no liability arises specifically from a failure to correct or update financial information provided to Plaintiff.

## II. Defendants Michael C. Deininger and Roger J. Swarat

Defendants Michael C. Deininger and Roger J. Swarat are both alleged to have been officers of Statewide Holding and Statewide Insurance during the relevant time period. Unlike Defendant Swank, Plaintiff does not allege that either Defendant Deininger or Defendant Swarat made any misrepresentations to Plaintiff. Instead, Plaintiff argues that because they knew that Defendant Swank had made certain misrepresentations to Plaintiff, they had a duty to correct his misrepresentations or disclose the omitted material information regarding the company's finances.

Plaintiff additionally argues that a duty of disclosure arose from the relationship of trust and confidence between them and Plaintiff.

Despite a specific request from this Court, Plaintiff provided no law or persuasive argument that Defendants Deininger and Swarat had a duty to disclose any information regarding Statewide Holding to Plaintiff. Plaintiff cites cases that impute the knowledge of the company's failing finances to Defendants Deininger and Swarat, but in each of these cases the knowledge was relevant only in determining whether defendants actually knew that the statements they made were misleading. *See Davis*, 385 F. Supp. 2d at 713; *Asher v. Baxter International, Inc.*, 2005 WL 331572, *1-2 (N.D. Ill. 2005); *Danis v. USN Communications*, 73 F. Supp. 2d 923, 938-39 (N.D. Ill. 1989). Defendants Deininger and Swarat are not alleged to have made any statements to Plaintiff.

Beyond the cases cited by Plaintiff, it is true that "even absent any misleading statements, an independent duty to disclose material facts may be triggered by a fiduciary-type relationship." *Schlifke*, 866 F.2d at 944. Such a fiduciary duty does not arise, however, solely from Defendants Deininger's and Swarat's role in controlling the operations of the company. Generally speaking, "a corporation and its shareholders do not have the kind of fiduciary relationship which requires total disclosure," *Blanchard v. Edgemark Financial Corporation*, 2001 WL 587861, * 4 (N.D. Ill. 2001), and "parties to an impersonal market transaction owe no duty of disclosure absent a fiduciary or agency relationship, prior dealings or circumstances such that one party has placed trust and confidence in the other." *Schlifke*, 866 F.2d at 945. Aside from Plaintiff's bare legal conclusion that he trusted Defendants generally, Plaintiff has not pleaded any facts supporting a reasonable inference that a relationship of trust and confidence existed between himself and Defendants Deininger and

Swarat. The only detail that Plaintiff provides regarding his relationship with Defendants Deininger and Swarat is that Defendant Swarat signed the debentures and caused them to be issued to Plaintiff. But Defendant Swarat's act of signing and issuing the debentures is not enough to invoke a duty of disclosure. *See Schlifke* at 946 (rejecting fiduciary duty where Bank had no direct dealings with investors but merely drafted loan documents). Having not pleaded any facts that would support a duty of disclosure from either Defendant Deininger or Defendant Swarat, Plaintiff's claims against them fail to state a claim.

## Conclusion and Order

Plaintiff has pleaded facts identifying the misleading statements and giving rise to a strong inference that Defendant Swank acted with the required state of mind. Based on the same facts, it cannot be said that there is no set of facts under which Plaintiff would be entitled to relief against Defendant Swank. Plaintiff, however, has not pleaded facts showing that either Defendant Deininger or Defendant Swarat owed him a duty to disclose the allegedly omitted material facts. Wherefore, Defendant Swank's Motion to Dismiss is denied and Defendants Deininger's and Swarat's Motions to Dismiss are granted. Defendant Swank is ordered to answer the Complaint within 14 days.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 28, 2006